FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ERIN JUNIOR,

    Plaintiff,

v.

INFINITY INSURANCE COMPANY,
a foreign insurance company,

    Defendant.

_____/

CASE NO.:

6:18-cv-1598-OLL-40TBS

Class Action

## **CLASS ACTION COMPLAINT FOR DAMAGES**

The Plaintiff Erin Junior, on behalf of herself and all others similarly situated, files this Class Action Complaint against Infinity Insurance Company ("Infinity"), and in support thereof states the following:

### **NATURE OF THE ACTION**

1. This is a class action lawsuit by Plaintiff who was the named insured under a Infinity automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage, which require payment of "Actual Cash Value" or ACV.

2. Defendant Infinity is a large private passenger auto insurance carrier operating in Florida, according to the Florida Office of Insurance Regulation 2015 Annual Report.[1] One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and

---

[1]   https://docs.google.com/document/d/1aKX9qIsjoqv6OZAKTXy505ZRvEpdyrUQf65L6CwznRs/edit   (accessed August 14, 2017).

belief, Defendant systematically underpaid not just Plaintiff but thousands of other putative Class Members amounts Defendant owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3. Defendants' policies and documents show that sales tax on the cash value of the insured vehicle at the time of loss and state and local regulatory fees are included in benefits provided by the comprehensive and collision coverage ACV for total loss vehicles.

4. This lawsuit is brought by the Plaintiff and all other similarly situated insureds that have suffered damages due to Defendant's practice of refusing to pay full ACV Sales Tax and mandatory regulatory fees to first-party total-loss insureds on physical damage policies containing comprehensive and collision coverages.

5. The failure to pay sales tax and state and local regulatory fees to first-party total losses owed to the Infinity insureds pursuant to the policy language is a breach of the policy and violates Florida law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and he and the Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

7. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

8. At all times material hereto, the Plaintiff Erin Junior is and was a person domiciled and residing in Volusia County, Florida, and is a citizen of the State of Florida.

9. At all times material hereto, the Defendant Infinity is and was a foreign corporation located in the State of Alabama and authorized to transact insurance in the State of Florida. Defendant Infinity also owns other, subsidiary companies operating under the "Infinity" name, and Defendant is responsible for the standardized automobile insurance policies and claims handling and payments issued to Plaintiff and all of the putative class members. Defendant's principal place of business and headquarters are both located in the State of Alabama.

## AMOUNT-IN-CONTROVERSY

10. Defendant is the 8th largest physical damage auto insurer in Florida based on premiums written. Ex. A (Market Share Report) pg. 362.

11. Upon information and belief and the investigation of her attorneys, including total loss rates per physical damage premiums written by insurers in similar litigation the present claim, Defendant insured, during the relevant time period, at minimum approximately 9000 total-loss claims.

12. The average total-loss claim vehicle value during the relevant time period is approximately $20,000. During the relevant time period, the State of Florida's sales tax rate was and is 6%. Even assuming a conservative average value of $15,000 would result in sales tax of $900 per claim, not even including local surtax (which ranges from 0% to 2% depending on county).

13. During the relevant time period, the State of Florida imposed a mandatory minimum title transfer fee of $75.25.

14. Plaintiff's claim, as further set out herein, alleges that Defendant's contract obliges it to include sales tax and title transfer fees to its insureds (including Plaintiff) in the event of a total loss, and that Defendant nevertheless uniformly declines to include sales tax and title transfer fees, thereby breaching its contract with every putative class member.   9000 multiplied by $900 (a conservative estimate) is $8.1 million.  9000 multiplied by $75.25 (the title transfer fee amount owed) is $677,250.   Thus a conservative estimate of the amount-in-controversy is $8.877 million, not including any local sales tax, attorney's fees, injunctive or any other form of relief.

15. Thus, the fact that the amount-in-controversy exceeds $5,000,000 is plainly stated on the fact of the documents and is "readily deducible" from these pleadings.  Lowery v. Ala. Power Co., 483 F.3d 1184, 1211 (11th Cir. 2007).

## FACTUAL ALLEGATIONS

16. Defendant Infinity's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in Infinity auto policies issued by Defendant in Florida.

17. Defendant Infinity's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in Infinity auto policies issued by subsidiary insurance companies under control of Defendant and issuing auto coverage in Florida.

18. Defendant Infinity's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in Infinity auto policies issued by Defendant.

19. Defendant Infinity's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in Infinity auto policies issued by Defendant and is present in policies of subsidiary insurance companies under control of Defendant.

20. ACV includes an obligation to pay sales tax in Florida equal to at least six percent[2] of the cash value of the insured vehicle at the time of loss (the "ACV Sales Tax"), along with state and local regulatory fees for total loss vehicle comprehensive and collision coverage.

21. At all times material hereto, Plaintiff Junior owned a 2003 Ford Expedition, VIN # 1FMRU17W03LB41970 ("Insured Vehicle").

22. At all times material hereto, Plaintiff insured the 2003 Ford Expedition under an insurance policy issued by Defendant. Ex. B (composite Policy-related documents) at 2 (Dec sheet).

23. On or about May 15, 2018, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number ICS20003225170_2153406.

24. Following the filing of said claim, Defendant determined that the Insured Vehicle was a total loss with a base value of $2,632.00.

25. The base value was calculated by a third-party vendor ("CCC") who bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage. CCC

---

[2] Florida's sales tax is 6%. Additionally, some counties impose a local sales tax of up to 1.5% on top of the 6% state sales tax, applicable to the first $5,000.

included in its Valuation Report the fact that sales tax was calculated at $171.08.  No amount for title transfer fee was included

26. Defendant, however, did not include sales tax in making ACV payment, nor did Defendant include title transfer fees or any other amount in making ACV payment.  Instead, Defendant paid only the "base value" of the vehicle and did not include sales tax or title transfer fee or any other amount.

27. Defendant's payment of merely the "base value" - and not sales tax or title transfer fee - constituted a breach of its insurance policy.

28. Sales tax and title transfer fees are both mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

29. Florida law requires that all vehicles be properly titled in order to be legally driven on Florida roadways. Fla. Stat. Ann. § 320.02 ("every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the vehicle in this state.").  The fee to transfer title to a vehicle is, at minimum, $75.25.

30. Further, Florida law requires that a minimum of 6% sales tax be paid on every motor vehicle purchased.  The minimum sales tax owed for total-loss claims is 6% of the base value of the vehicle.  Additionally, counties within Florida may impose an additional surtax on the first $5,000 of vehicle value.

31. No private-passenger replacement vehicle in Florida can be purchased without payment of sales tax and minimum mandatory regulatory fees.

32. Plaintiff was owed sales tax in the amount of 6% of the agreed value of her vehicle, local surtax of 1%, and title transfer fees of $75.25.

33. In breach of its contract with Plaintiff, Defendant did not include any sales tax or title transfer fee in making the ACV payment for Plaintiff's total loss.

34. Ms. Junior paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

## THE INFINITY INSURANCE POLICY

35. The insurance policy (Ex. B), under the section entitled "Coverage for Damage to the Insured Auto" (p. 11)[3], states that "Collision" coverage means coverage for "loss caused by the insured auto's upset or overturn, or sudden impact with another object."

36. The "insured auto" is defined, *inter alia*, as the auto listed in the declarations page. Id. at 2.

37. In the same section, under a provision entitled "Limits of Liability" (Id. p. 12), states that in the event of loss, the limit of liability is the "actual cash value" including adjustment "for depreciation or betterment."

38. "Loss" is defined, in relevant part, as "sudden, direct and accidental damage to, or theft of, the insured auto[.]" Id. at 11.

39. There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total-loss claim and a comprehensive total-loss claim.

40. ACV is defined as the market value at the time of loss, based upon factors such as vehicle age, mileage, optional equipment, less depreciation and/or betterment. Id. at 11.

41. Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV Sales Tax and state or local regulatory fees for any purpose whatsoever;

---

[3] Page 29 of the exhibit. Citations to the policy page numbers are pinpointed to the actual policy page number, rather than to the page number of the composite exhibit.

(3) any provision requiring an insured to obtain a replacement vehicle; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV Sales Tax or state and regulatory fees; or (5) any provision linking the amount of ACV Sales Tax or state and regulatory fees to a particular replacement vehicle and the corresponding sales tax or state or local regulatory fees on said replacement vehicle.

42. The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased, insured auto's are considered "owned" for purposes of the policy. Id. at 2-3.

## PAYMENT OF SALES TAX AND MANDATORY FEES

43. Florida law is clear that courts cannot limit the scope of a term, if it is not defined in the policy, to a narrow definition that benefits the insurer; in fact, if policy language is susceptible to more than one reasonable interpretation, it is construed in the light that would grant coverage, i.e. to the benefit of the insured and against the insurer. *Travelers Indem. Co. v. PCR Inc.,* 889 So. 2d 779 (Fla. 2004).

44. Fla. Stat. § 626.9743 requires insurers to include sales tax when adjusting policies on the basis of ACV. Such statute is a mandatory statute incorporated as a matter of law into Defendant's policies, which adjusts claims pursuant to their ACV policy provision.

45. The Middle District has recently ruled on this exact issue. *Bastian v. United Servs. Auto. Ass'n,* 150 F. Supp. 3d 1284 (M.D. Fla. December 10, 2015). In *Bastian,* this Court held that Fla. Stat. § 626.9743 language *requiring* insurers to pay sales tax as a part of actual cash value but *allowing* such payment to be after the procurement of a replacement vehicle requires insurers to specifically select the option of deferring payment until replacement.

8

46. Additionally, the 11th Circuit interpreted Florida law as requiring payment of sales tax in ACV policies where sales tax is reasonably likely to be incurred upon replacement. Mills v. Foremost Insurance Co., 511 F.3d 1300, 1306 (11th Cir. 2008).

47. Defendant certainly did not incorporate such statutory scheme into their policy and does not require insureds to replace their vehicle in order to receive ACV payments under the policy.

48. Market value in Florida is defined and calculated as the cost to replace a vehicle minus depreciation. Fuchs v. Robbins, 738 So.2d 338, 342 n.9 (Fla. 3d DCA 1999); Trinidad v. Florida Peninsula Insurance Co., 121 So.3d 433, 438 (Fla. 2013).

49. Defendant's policy promises to provide those costs reasonably likely to be incurred upon replacement, including sales tax and title transfer fees. Nevertheless, Defendant declines to actually include sales tax and title transfer fees in making ACV payment to total-loss insureds, thereby breaching its contracts with insureds.

50. Defendant Infinity is the parent company of numerous subsidiary insurers. Defendant Infinity, as the parent, controls each subsidiary, provides the standardized policy forms, training, underwriting, premiums, policy language and in all ways is responsible for the failure to pay sales tax and state and regulatory fees promised under the comprehensive and collision coverages.

## CLASS ALLEGATIONS

51. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

52. Plaintiff's claims are typical to those of all class member because members of the class are similarly affected by Defendant's failure to pay ACV Sales Tax and state and local regulatory

fees upon the total loss of insured vehicles.  The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policy.

53. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is the Plaintiff subject to any unique defenses.

54. Plaintiff's claim raises questions of law and fact common to all members of the class, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3).  Said common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed ACV Sales Tax and state and local regulatory fees upon the total loss of an insured vehicle; and (b) whether the Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to pay ACV Sales Tax and state and local regulatory fees upon the total loss of an insured vehicle.

55. Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to pay ACV Sales Tax and state and local regulatory fees upon the total loss of insured vehicles.

56. Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class.

57. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions.  Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

58. Class action is necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(a), because the prosecution of separate actions by or against individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

59. Class treatment is also necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(b), because the prosecution of separate actions by or against individual Class Members would create a risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications, or would substantially impair or impede their ability to protect their interests.

60. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

61. Any argument that class treatment is not viable or productive in the present action is undercut by the fact that the Middle District very recently treated as a class action a case that is substantially identical in fact and in law to the present action. See *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. December 10, 2015). *Bastian* is in the process

of being successfully settled as a class, and stands as incontrovertible evidence demonstrating the efficacy and viability of class treatment in the present action. Similarly, Roth v. Geico General Insurance Co., Case No. 16-62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018) is a substantially similar case recently certified as a class action with judgment entered in favor of the class.[4]

62. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

### MONETARY RELIEF CLASS

All insureds, under any Florida policy issued by Infinity Insurance Company and its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

### INJUNCTIVE RELIEF CLASS

All persons insured by Infinity Insurance Company and its subsidiaries for private-passenger auto physical damage coverage for comprehensive or collision coverage.

63. The issues related to Plaintiff's claim do not vary from the issues relating to the claims of the other members of the class such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

64. Certification of the above class is also supported by the following considerations:

---

[4] Arguably, Roth faced more difficulties in establishing class treatment given that GEICO paid sales tax if the insured vehicle was owned or financed, but not if it was leased, and yet still was easily certified as a class. Thus, the plaintiff needed to distinguish between claims to determine whether sales tax had been paid. Here, however, Defendant does not distinguish between owned, financed or leased vehicles and thus class treatment is even more suitable.

a. The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b. Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and

c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

65. Although the precise number of class members for the Monetary Relief Class and the Injunctive Relief Class are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurer in the State of Florida and writes hundreds of millions of dollars of private-passenger physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to both classes is established.

66. Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Monetary Relief Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for classwide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include (but are not limited to):

(1) Whether policy language ACV includes sales tax and title transfer fees, and (2) whether Defendant is required to pay sales tax and title transfer fee amounts to insureds who suffer total-losses to vehicles insured under Defendant's Policies.

67. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Monetary Relief Class is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct.   Further, Plaintiff's and Class Members' legal claims arise from the same core practices, namely, the failure to pay full ACV, including sales tax and title transfer fees, for first-party total loss claims.  Plaintiff's claims are based upon the same legal theories as those of the Monetary Relief Class Members.  Plaintiff suffered the same harm as all the other Monetary Relief Class Members: the coverage for sales tax and title transfer fees that Defendant failed to pay its insureds.

68. Plaintiff's claims are maintainable on behalf of the Monetary Relief Class pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate claims or defenses by or against individual Monetary Relief Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Monetary Relief Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Monetary Relief Class Members that, as a practical matter, would be dispositive of the interests of other Monetary Relief Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

69. The relevant Policy provisions for each Monetary Relief Class Member are the same.  The relevant law relating to the interpretation and application of those Policy provisions for each

14

Monetary Relief Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Monetary Relief Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

70. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Monetary Relief Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

71. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Monetary Relief Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

72. The Injunctive Relief Class meets the requirements for class treatment under Fed. R. Civ. P. 23(a) and (b)(2).

73. Numerosity is established because although Plaintiff does not know the precise number of individuals insured under a private-passenger auto physical damage policy issued by Defendant and such number can only be established through discovery, the fact that Defendant is a large insurer writing hundreds of millions of dollars in premiums for such

15

insurance policies indicates that numerosity is easily established as to the Injunctive Relief Class.

74. As to the Injunctive Relief Class, Common questions of law and fact exist and predominate over any question affecting only individual Injunctive Relief Class Members. Fed. R. Civ. P. 23(a)(2). Because the central issues in this case turn on the interpretation of identical policy provisions, this case is especially well-suited to class adjudication. Further, Defendant and all members of the Injunctive Relief Class are bound by the same material terms, and the central issues in the case all involve interpretation of the same material and controlling terms.

75. Plaintiff's claims and defenses are typical of the claims of the Injunctive Relief Class. Fed. R. Civ. P. 23(a)(3). Plaintiffs and Injunctive Relief Class Members have insurance Policies with identical material terms. Plaintiff's injunctive relief claims are based upon the same legal theories as those of the Injunctive Relief Class Members.

76. Plaintiff's claims also are maintainable on behalf of the Injunctive Relief Class pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted, and refused to act, on grounds that apply generally to all the Injunctive Relief Class Members, thereby making final injunctive relief appropriate with respect to the Injunctive Relief Class as a whole. Defendant has created and implemented a uniform claims handling practice based on policy language that is applicable to all Injunctive Relief Class Members. Defendant's practice of failing to pay full ACV, including sales tax and title transfer fees, for first-party total loss claims applies generally to all Injunctive Relief Class Members and is ongoing.

77. Defendant's breach of Policy provisions requiring them to pay full ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop

these repeated and continued violations, which are likely to continue, repeat, and cause damages to Plaintiffs and the Injunctive Relief Class in the future.

**CLAIM FOR BREACH OF CONTRACT**

78. The allegations contained herein are incorporated by reference.

79. This count is brought by Plaintiff Erin Junion on behalf of herself and the Class Members.

80. Plaintiff was party to an insurance contract with Defendant as described herein. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

81. The interpretation of Plaintiff and all Class Members' insurance Policies is governed by Florida law.

82. Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy, and determined by Defendant to be a covered claim.

83. Defendant, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under the Policies for each Plaintiff to be paid on his or her total loss.

84. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the actual cash value of the vehicle, including ACV Sales Tax and title transfer fees.

85. Defendant refused to pay ACV Sales Tax and title transfer fees to Plaintiff and every Class Member.

86. Defendant's failure to provide coverage for the ACV Sales Tax and title transfer fees constitutes a material breach of contract with Plaintiff and every Class Member.

87. As a result of said breaches, Plaintiff and the class members are entitled under Defendant's insurance policies to sums representing the benefits owed for ACV Sales Tax and state and local regulatory fees, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

88. In addition, Plaintiff and the class members are entitled to an award of attorney's fees and costs pursuant to § 627.428 Fla. Stat. and all other other statutory or contractual provisions allowing for attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff Erin Junior, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Classes described above;

- For an award of compensatory damages for the Monetary Relief Class in amounts owed under the Policies;

- For injunctive relief for the Injunctive Relief Class to prevent continuation of this illegal practice, for other injunctive relief as is proven appropriate in this matter;

- For all other damages according to proof;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. § 627.428;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.

Dated this 25th day of September, 2018.

Respectfully submitted,

By:     /s/ Ed Normand
        Edmund A. Normand, Esq.
        FBN: 865590
        Normand, PLLC
        Post Office Box 1400036
        Orlando, FL 32814-0036
        407.603.6031
        firm@ednormand.com
        ed@ednormand.com


By:     /s/ Jake Phillips
        Jacob L. Phillips, Esq.
        FBN: 0120130
        Normand, PLLC
        Post Office Box 1400036
        Orlando, FL 32814-0036
        407.603.6031
        jacob@ednormand.com


By:    /s/ Christopher J. Lynch
        FBN 331041
        Christopher J. Lynch, P.A.
        6915 Red Road, Suite 208
        Coral Gables, Florida 33143
        Telephone: (305) 443-6200
        Facsimile: (305) 443-6204
        Clynch@hunterlynchlaw.com
        Lmartinez@hunterlynchlaw.com