IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ERIN JUNIOR, individually and on behalf of all
others similarly situated,

      CASE NO.: 6:18-cv-1598-ORL- 40-TBS

     Plaintiff,

      CLASS ACTION

v.

INFINITY AUTO INSURANCE COMPANY,
a foreign insurance company

     Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT**

Plaintiff Erin Junior submits this unopposed Motion and respectfully requests that the Court preliminarily approve the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto ("Agreement"), attached hereto as Exhibit A and incorporated herein by reference.

## I.    CONCISE STATEMENT OF THE RELIEF REQUESTED

The Parties file this motion requesting that the Court preliminarily approve a class action settlement, and preliminarily certify a settlement class. The Parties jointly and respectfully request that the Court grant preliminary approval of the proposed settlement, and enter an order of preliminary approval including the content of the proposed order attached as Exhibit 1 to the Agreement.

The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. The parties anticipate later requesting final approval of the settlement in advance of the fairness hearing.

## II.    **STATEMENT OF THE BASIS FOR THE REQUEST**

The Parties have reached a settlement agreement for the purpose of providing to members of a settlement class who make a valid claim sales tax, title transfer fees, and tag transfer fees in the full amount alleged to be owed in the Second Amended Complaint to total-loss insureds. The settlement agreement also provides to class members who make a valid claim 75% of any other fees incidental to the replacement of a vehicle that class members incurred when replacing their vehicle, not to exceed $525.00 (which would correspond to $800.00 in incurred fees ($800.00 * 0.75 = $525.00)).

## III.    **MEMORANDUM OF LEGAL AUTHORITY**

### a.  **Background**

The Parties reached the Agreement after nine months of litigation and following a day-long mediation session with mediator Rodney Max on June 19, 2019, followed by lengthy further negotiations.

This case involves allegations that Defendant breached automobile insurance policies issued to Plaintiff and members of the proposed class by failing to include in payments for total loss vehicles an amount for sales tax calculated based on the sales tax that would be due upon purchase of a comparable vehicle and failure to pay other regulatory fees. Exhibit B ("Phillips Decl.") ¶ 5. Defendant's practice and procedure concerning sales tax depended on several potential factual scenarios. If the total-loss insured elected to retain the salvage value, Defendant's practice was to not include any amount in sales tax in making the total-loss payment. *Id.* at ¶ 6. If the total-loss insured did not retain salvage value, and the sales tax amount (calculated as a percentage of the total-loss adjusted vehicle value, or "ACV Sales Tax") was $250.00 or less, Defendant's practice was to include sales tax in the total-loss payment. *Id.* If the total-loss insured did not retain salvage value and the ACV Sales Tax exceeded $250.00, Defendant's practice was not to include sales tax in the total-loss payment unless and until the insured actually incurred the cost of sales tax in replacing the vehicle, at which

point Defendant would pay the incurred sales tax up to the amount that would be owed on the total-loss vehicle. *Id.* Further, Defendant's practice was generally not to include regulatory fees or fees incidental to vehicle replacement, including title transfer fee and tag transfer fee. *Id.* at ¶ 7.

The aforementioned facts were elicited through discovery conducted and data solicited during this litigation. *Id.* at ¶ 4, 8. Plaintiff alleges that the failure to pay costs reasonably likely to be incurred constitutes a breach of contract; at minimum, then, the failure to pay regulatory fees, such as title transfer fee and tag transfer fee, constitutes a breach of contract for every putative class member. Plaintiff further alleges that the failure to pay ACV Sales Tax constitutes a breach of contract for any putative class member not paid sales tax in an amount calculated as the applicable percentage of the adjusted vehicle value. Defendant maintains that its practices and procedures were valid and lawful pursuant to its Policies and Florida law.

If the case were to proceed through final judgment in this Court, and then an appeal to the Eleventh Circuit, both sides would bear risk. The putative class would bear the risk of recovering nothing if class certification were denied or reversed on appeal, or if judgment was entered in favor of Defendant or a judgment in favor of the class was overturned on appeal. Plaintiffs alleging similar claims have secured summary judgment and class certification in several similar cases in front of Judge Byron and in the Southern District of Florida; however, one of those cases, *Roth v. Geico General*, is currently pending before the Eleventh Circuit and Geico General is appealing both the certification of the class and summary judgment.[1] Plaintiff and the class bear the risk that an overturn by the Eleventh Circuit of those related issues would make their case far less likely to succeed, while Defendant bears the risk that the Eleventh Circuit could affirm such decisions and make the Class *more* likely to prevail. *Id.* at ¶¶ 10-12.

---

[1] Other cases are not yet ripe for appeal, and in at least one case (*Jones*), the Parties notified this Court they reached settlement.

Infinity has agreed to change its practice in Florida such that they include in payments for total loss vehicles an amount for sales tax calculated as the applicable percentage of the adjusted vehicle value irrespective of any replacement. Agreement at ¶ 111. Infinity also agreed to change their practice in Florida such that they include in payments for total loss vehicles the mandatory minimum amounts for title transfer fees and registration transfer fees. *Id.* Infinity agreed to maintain such practice in place, for a commercially-reasonable time, unless and until 1) they implement a change in the insurance policy forms permitting or requiring a different practice and procedure; 2) a Florida District Court of Appeal, the Florida Supreme Court or the U.S. Court of Appeals for the Eleventh Circuit issues a decision on the issue permitting a different practice and procedure; or 3) the Florida legislature amends to passes a new statute requiring a different practice or procedure. *Id.*; see also Phillips Decl. at ¶ 18.

### b. The Proposed Settlement

The proposed settlement requires Defendant and its related entities and subsidiaries to do the following: (1) make payment to all settlement class members who submit valid claims in an amount equal to the adjusted vehicle value plus sales tax of 6% of the adjusted vehicle value, plus $75.25 in title transfer fees, plus $4.60 in tag transfer fees, offset by payments for sales tax or transfer fees, if any, in the original total-loss payment; (2) make payment of any other incurred fees other than title transfer and tag transfer fees to all settlement class members who submit their replacement purchase agreement with the claim form, up to $525.00. Agreement at ¶¶ 63-67.

As to the first requirement, consider a hypothetical where the adjusted vehicle value of a total loss vehicle is $20,000. If the original total-loss payment did not include any amount in Sales Tax or Transfer Fees, the class member would be entitled to payment of $1,279.85 ($1,200 in sales tax ($20,000 * .06) + $75.25 (title transfer fee) + $4.60 (tag transfer fee)). Phillips Decl. ¶ 16. Consider a second hypothetical in which the adjusted vehicle value is $2,000. If the original total-loss payment included $120.00 in sales tax, the class member would be entitled to payment of $79.85, under the

same calculation listed above.[2] *Id.* Finally, consider a third hypothetical: if the adjusted vehicle value is $10,000 and the original total-loss payment included $300.00 in sales tax, the class member would be entitled to payment of $379.85 ($600.00 in sales tax ($10,000 * .06) + $75.25 + $4.60, less the original $300.00 in sales tax).. *Id.*; *see also* Agreement at ¶ 65 (explanation through use of hypotheticals).

Under the second scenario, Defendant and its related subsidiaries and entities agree to make an additional payment for any other fees incidental to the replacement of a vehicle if the class member includes its replacement vehicle purchase agreement along with the claim form. Agreement at ¶¶ 63-65. Class members do not need to submit the purchase agreement in order to be entitled to amounts listed above. Class members only need to submit the purchase agreement if they seek payment of fees *in addition to* amounts for sales tax and transfer fees as set forth above. Phillips Decl. at ¶ 17; Agreement at ¶ 64. If the class member submits the purchase agreement, Defendant will also pay for 75% any other fees incidental to replacement of the vehicle up to $525.00. In other words, if a class member paid any other fees incidental to the replacement of the vehicle in the amount of $300.00, Defendant will pay $225.00 in addition to any amounts owed for sales tax and transfer fees as set forth above. If the class member paid any other fees incidental to the replacement of a vehicle in the amount of $900, Defendant will pay $525 in addition to any amounts owed for sales tax and transfer fees as set forth above. *Id.*

Finally, Defendant agrees, moving forward, to include in payments for total loss vehicles insured under Florida policies an amount for sales tax calculated as the applicable state plus local percentage on the adjusted vehicle value of the total-loss vehicle, along with $75.25 for title transfer fees and $4.60 for tag transfer fees, unless and until 1) they implement a change in the insurance policy

---

[2] This hypothetical would be unsurprising, because the ACV Sales Tax is $120.00 (6% of the adjusted vehicle value, i.e. $2,000). Defendant's general practice was to pay sales tax without condition if the amount owed was $250.00 or less, but to not pay title and tag transfer fees. Under this scenario, then, the amount to which the class member is entitled represents an amount for title transfer fees ($75.25) and tag transfer fees ($4.60, for a total of $79.85).

forms permitting or requiring a difference procedure; 2) a Florida District Court of Appeal, the Florida Supreme Court or the U.S. Court of Appeals for the Eleventh Circuit issues a decision on the issue permitting a difference procedure; or 3) the Florida legislature amends or passes a statute requiring a different procedure.

Plaintiff calculate that the settlement cash value for all past claims under the terms of the settlement is approximately $22.79 million. Phillips Decl. at ¶ 20. Plaintiff also calculate that the value of the agreement to change the business practice, which varies based on claim volume, is approximately $187,600 per month and $2.25 million per year. Id. at ¶ 21. Determining the amount that was paid for sales tax on many of the claims may require a detailed review of the claim file to assess the basis for each payment that was made and what was included in that payment. *Id.* at ¶ 22. The proposed settlement provides for Infinity to review the files of class members who make claims in the settlement in order to make these determinations. Further, determining the amount owed in other fees incidental to the replacement of a vehicle requires a review of the replacement purchase agreement. The class member will have the opportunity to object to any determination by Infinity and, if necessary, a neutral evaluator will arbitrate any disagreement. Agreement at ¶¶ 23, 76. For the convenience of settlement class members in submitting claims, Infinity will extract available information from its claim records concerning the vehicle make, model and year, and the date of loss, to pre-fill information on the claim forms. *See Id.* at Exhibit 3.

This type of settlement structure, under which class members need to submit claim forms if they wish to make a claim for payment in the settlement process, is regularly approved by federal courts, including in the Eleventh Circuit. *See, e.g.*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles where the defendant's internal procedure for payment of sales tax was materially identical to Infinity's); *Bd. of Trs. of Lake Worth Employees' Ret. Sys. v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 2012 U.S. Dist. LEXIS 194111 (M.D. Fla. July 30, 2012); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1238 (11th Cir. 2011); *Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, *40-41 (S.D. Fla. Apr. 13, 2016); *Braynen v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 151744, *43-44 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 177155, *23-24 (S.D. Fla. Dec. 17, 2014).

The proposed settlement further provides that class counsel may make an application for fees and costs to be awarded in the Court's discretion, not to exceed $2,500,000.00, and Infinity will not oppose that application. Agreement at ¶¶ 83-86. The proposed settlement also provides that class counsel may make an application for incentive awards to the named Plaintiff to compensate her for service as class representative, not to exceed $5,000.00 and Infinity will not oppose that application. *Id.*

### c. Class Certification Is Warranted

In deciding whether to grant preliminary approval, some courts have also made a preliminary inquiry into whether the requirements of Fed. R. Civ. P. 23 for certification of a class for settlement purposes are satisfied.[3] *See, e.g., Legg v. E-Z Rent a Car, Inc.*, 2015 U.S. Dist. LEXIS 178022, at *3-4 (M.D. Fla. May 28, 2015) (Byron, J.) (addressing Rule 23 factors in preliminary approval Order). Each of those requirements are satisfied here for settlement purposes, for the Settlement Class, defined as:

> All policyholders who were paid a Total Loss Payment under an Automobile Insurance Policy during the Class Period.[4]

---

[3] Defendant does not oppose certification of the Settlement class, and has agreed to settle the Settlement Class claims as set forth herein. However, Defendant does not necessarily agree with Plaintiff's interpretation of Rule 23 and does not agree that such factors would apply to a litigation class. Defendant maintains all defenses to class certification should this Agreement not be finally approved for any reason, and this Agreement does not constitute a waiver of any such defenses to a litigated class.

[4] There are several minor differences between the Settlement Class here and that alleged in the Second Amended Complaint. First, the Class Period runs through the date Preliminary Approval is entered. Agreement at ¶ 9. Second, there is no "private-passenger" limiting adjective, because Infinity agreed to include commercial total-loss claims, and the commercial Policy language is materially identical to private-passenger Policy language. Phillips Decl. at ¶ 22. Third, the injunctive relief class is not

Excluded from the class are: (i) claims that were the subject of any lawsuit filed during the Class Period alleging causes of action related to any Released Claims, except for the Named Plaintiff's claims; (ii) claims for which Infinity received a valid and executed release during the Class Period; and (iii) Infinity, all present or former officers and/or directors of Infinity, the Neutral Evaluator, Class Counsel, a Judge of this Court, and Infinity's counsel of record. Agreement at ¶ 34.

The numerosity requirement is satisfied for purposes of settlement because Infinity, through deposition testimony and records produced including during discovery and during mediation and the settlement process, demonstrated that that there are more than 19,000 class members during the class period who had total loss auto claims in Florida and are entitled to, at minimum, transfer fees, and may be additionally entitled to payments for sales tax and other fees incidental to replacement of a vehicle. Phillips Decl. at ¶ 25.

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350(2011). Here, the commonality requirement is satisfied for purposes of settlement because there is a common question of law concerning whether

included here. Since the filing of the Second Amended Complaint, the Eleventh Circuit held that equitable relief in a class action against an insurer was inappropriate because the plaintiff lacked Article III standing, given that he did not (and could not) show sufficient likelihood of reoccurring injury as to himself. *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 2019 U.S. App. LEXIS 16067 (11th Cir. May 30, 2019) (*citing Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999); *accord Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, . . . the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'") (other citations omitted). Although Infinity has agreed to change its business practice as outlined herein – and thus conferred a substantial benefit on those Settlement Class members still insured by Infinity and on those Class Members who would have made up the Injunctive Relief class – given the Eleventh Circuit's holding, Plaintiff does not believe she can adequately show Article III standing such that the Injunctive Relief class could be certified.

Infinity's standard and uniform Policy promise to pay the actual cash value of a total-loss vehicle requires payment of costs reasonably likely to incur, including sales tax, title and tag transfer fees, and other fees incidental to the replacement of a vehicle. This issue applies to all claims of the proposed Settlement Class and every Settlement Class member, and its resolution – whether in further litigation or on appeal – would resolve an issue central, perhaps dispositive, to every class member claim. Phillips Decl. at ¶¶ 26.

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). To show a "sufficient nexus" exists, the claimant must show that "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Here, the typicality requirement is satisfied for purposes of settlement because Plaintiff's claims based on precisely the same legal theory and "pattern or practice" as every Class Member: the claim that ACV includes costs reasonably likely to be incurred in replacing a vehicle, and Infinity's "pattern or practice" of not paying some costs "reasonably likely to be incurred" at all (for instance, title transfer fees) and imposing an extracontractual precondition on payment of other costs "reasonably likely to be incurred" (namely, sales tax). Phillips Decl. at ¶ 28. Further, Plaintiff's claim is typical of the Class Members because Plaintiff and every Class member were insured under form Policies containing materially identical language. *Id.*

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "encompasses two separate inquiries: 1) whether any substantial conflicts of interest exist between the representatives and the class; and 2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva*

*Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Here, the adequacy of representation requirement is satisfied for purposes of settlement. Class Counsel's declaration demonstrates that Plaintiff adequately performed her duties as class representative. Phillips Decl. at ¶ 31-32. There is no evidence that Plaintiff possesses any conflict of interest with the Proposed Class. *Id.* The declaration of Class Counsel demonstrates they competently represented the proposed class to date, and are qualified to represent the settlement class. *Id.* at ¶¶ 34-46. Further, Class Counsel has litigated several other similar class actions with successful results, and have been appointed Class Counsel in such cases in the Southern District and by Judge Byron in other cases in the Middle District. *Id.*

Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance) and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3). The predominance inquiry requires a court to determine whether any common issues are more prevalent than any individualized issues, and, if they are, predominance is satisfied. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). As to the superiority analysis, the question of "whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004). Here, the common question – whether ACV includes costs reasonably likely to be incurred in replacement – predominates over any individual question. Essentially the only "individual" question, such as it is, concerns the amount of damages to which Class Members are entitled, and individual question of damages do not preclude a finding of predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016)

As to the superiority factor, "[p]roper superiority analysis considers 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 537-38 (11th Cir. 2017) (*quoting Sacred*

*Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010)).

When common issues predominate over individual ones, superiority often is found because the less

that individual questions are central to litigation, the less individual class members have in controlling

the litigation. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Here, common issues are

entirely central to the litigation (thus more than satisfying the first prong of the superiority analysis)

and the other three prongs also favor class treatment – no action was "already commenced" by any

member of the class prior to this litigation,[5] it is desirable and efficient to concentrate class members'

identical claims in this forum, and Plaintiff is unaware of any difficulties in the management of this

action.[6] *Id.* at 1269 (setting forth the four superiority prongs of analysis).

Given that Defendant, by agreeing to the proposed settlement, agreed to make payments of

additional sales tax amounts based only upon vehicle valuations already performed and flat fees that

are administered mechanically, individualized questions do not predominate and a class action is

superior to other available methods of adjudication. Phillips Decl. at ¶ 28.

### d.  Preliminary Approval Is Warranted

Preliminary approval of a class action settlement "is not binding, and it is granted unless a

proposed settlement is obviously deficient." *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832,

---

[5] A case in the Southern District was brought by an Infinity insured as a putative class action that was filed almost a year after Plaintiff filed. Phillips Decl. at ¶ 29. However, that case is one of several others that predominantly focuses on a challenge to the *methodology* utilized to determine the base value of the total-loss vehicles. *Id.* Plaintiff asserts no such claim here, it is not a part of the settlement, and the Parties agreed to specifically exclude such claims from the release. *Id.* Thus, the plaintiff in that case will be able to continue prosecuting their claim challenging Defendant's methodology in determining the base value of the total-loss vehicle. *Id.* at ¶ 30.

[6] Indeed, Judge Byron certified two similar cases concerning almost identical claims as those here – failure to pay certain replacement costs to insureds who suffered a total loss – against Geico and State Farm. *Jones v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 58201 (M.D. Fla. Apr. 4, 2019); *Sos v. State Farm Mut. Auto. Ins. Co.*, 2019 U.S. Dist. LEXIS 139680, at *10 (M.D. Fla. May 2, 2019); *see also Roth v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 226658, at *9 (S.D. Fla. May 3, 2018) (Dimitrouleas, J.) (certifying class of GEICO insureds for claim alleging GEICO underpaid sales tax and title transfer fees).

*6 (S.D. Fla. June 15, 2010). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.* at *7. These requirements are readily satisfied here, as demonstrated above and in the exhibits hereto. *City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, *14-15 (S.D. Fla. Aug. 24, 2016) (granting preliminary approval of proposed class action settlement where "the proposed settlement was made after mediation was conducted," "[t]he negotiations appear to have been made in good faith and there do not appear to be any obvious deficiencies," and the settlement amount "appears to be within the range of reasonableness"); *Almanzar v. Select Portfolio Servicing, Inc.*, 2015 U.S. Dist. LEXIS 178149, *5- 6 (S.D. Fla. Oct. 15, 2015) (granting preliminary approval, finding that proposed class action settlement was based on "informed, good-faith, arms-length negotiations between the Parties and their capable and experienced counsel," and settlement was "within the range of reasonableness and possible judicial approval").

As will be set forth in greater detail in the Motion for Final Approval – and as demonstrated by the attached Agreement – all six factors used by courts to evaluate the fairness and adequacy of a settlement favor approval here. *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n. 6 (11th Cir. 1994) (outlining six factors). 1) There was no fraud or collusion in the settlement, which rather was entered into after arms-length negotiations and with the assistance of an experienced and well-respected mediator; 2) this litigation is complex and expensive (similar litigation is ongoing for cases filed in 2016, some of which are currently pending appeal); 3) Plaintiff propounded extensive discovery and deposed representatives concerning the claims process, procedures, and data to gain a complete understanding of all of the issues in this litigation; 4) likelihood of success is uncertain; 5) Plaintiff secured the full damages she sought (along with fees in *addition* upon submission of a purchase agreement); and 6) Plaintiff and her counsel believe that securing full damages – and even beyond – is an excellent result for the class. Phillips Decl. at ¶¶ 47-49; Exh. C (Decl. of Mediator Rodney Max);

*see also, e.g.*, *Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion."); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, *11 (S.D. Fla. Sept. 14, 2015) (recognizing Rodney Max as "probably one of the top mediators in the country.").

Plaintiffs believe the Agreement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the settlement. *See Palmer v. Dynamic Recovery Solutions, LLC*, 2016 U.S. Dist. LEXIS 59229 (M.D. Fla. May 4, 2016) (Bryon, J.) (comparing merits of the case to the relief secured through settlement in determining whether to preliminarily approve a settlement). Although Plaintiff intends on laying out the reasons why the settlement is beneficial to the class in greater detail when Plaintiff moves for final approval, Plaintiff briefly notes that as set forth above, likelihood of success is uncertain. Although insureds making similar claims have secure positive rulings at the trial court level, no appellate court – state or federal – have substantively addressed the questions of liability or class certification in these total-loss cases. One such case is currently pending in the 11th Circuit – and of course, as to the merits, the standard of review is *de novo*. Phillips Decl. at ¶¶ 10-12.

Under this Court's analysis in *Palmer*, such reality is then compared to the value of the relief secured through the Settlement. 2016 U.S. Dist. LEXIS 59229. The value of the settlement is significant. First, Plaintiff secured $79.85 in title and tag transfer fees and the full 6% in sales tax, which essentially equals the relief that could have been afforded even by a final, contested judgment. Phillips Decl. at ¶¶ 47-48; *see also, e.g.*, *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (finding significant that settlement afforded more relief than likely would have been secured at trial).[7] Additionally, the Notice to which the Parties agree is robust and comprehensive. Phillips

---

[7] As to Additional Fees, the relief secured is also significant, particularly given the uncertainty (or even unlikelihood) of success – no court has ever afforded relief to plaintiffs on such claims and, to Plaintiff's knowledge, no such relief has been included in any settlement. Phillips Decl. at ¶ 48-49.

Decl. at ¶ 49. Defendant agreed to send individual Notice by direct mail (including provisions to ensure any class member who changed addresses is located), thus providing significant assurance that Class Members will receive Notice. Agreement at ¶ 52-57; *see Braynen v. Nationstar Mortg.*, LLC, 2015 U.S. Dist. LEXIS 151744, at *56 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence terms of settlement are fair and reasonable).

Moreover, as to Sales Tax and Title and Tag Transfer Fees, the claims process is as simple as it could conceivably be – the form is pre-filled, postage pre-paid, and Class Members must simply attest to the information and send the Claim form back. Agreement at ¶¶ 66, 71-72, Exhibit 3; *see Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *32-33 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."). As to Additional Fees, Class Members must simply include in the Claim Form their replacement-vehicle purchase/lease agreement – and even such inclusion in no way impacts a Class Members' eligibility for Sales Tax and Title and Tag Transfer Fee payment, but is instead completely optional for Class Members who want to receive an Additional Fee payment. Agreement at ¶¶ 64, 66-67.

The settlement includes a claims-made structure, which does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014) (quotations omitted). Defendants asserted and confirmed they would not settle the claim absent the claims-made structure. Agreement at ¶ 117. Courts find this to be perhaps the most important factor in determining whether a claims-made settlement is fair and reasonable. *See, e.g.*, *Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 156553, at *6 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the

feasibility of direct payment "is irrelevant") (*citing Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")); *Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, at *49 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure).[8] The question is not whether a claims-made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 U.S. Dist. LEXIS 156553 ("The Court does not have the authority to impose a preferred payment structure upon the settling parties"); *Lee*, 2015 U.S. Dist. LEXIS 121998, at *81 ("a claims-made structured settlement is fair, reasonable, and adequate on its own terms").

The Agreement removes the risk that the class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. In exchange for removing such risk entirely, far from accepting a concomitant reduction in the potential damages, the Agreement provides virtually the same relief that could be awarded by a contested judgment on Sales Tax and Title and Tag Transfer fees – and provides even more recovery for possible Additional Fees which have never been awarded by any other court nor provided through settlement. Phillips Decl. at ¶¶ 47-49; *see also, e.g., Id.* (providing near-complete relief on a claims-made basis is "extraordinary" result); *Wilson*, 2016 U.S. Dist. LEXIS 15751, at *9 (same). For all such reasons, and as will be more fully

---

[8] Moreover, even were Defendants willing to settle on a direct-pay model, which would inevitably mean significantly less payment per class member than under a claims-made model, Plaintiffs and their counsel do not believe such a settlement would have been fairer to class members. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims-made class settlement). As the Southern District cogently explained, "[n]egotiating for a smaller amount to go to Class Members would, in effect, unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *57 (S.D. Fla. Sep. 14, 2015).

explained in the Motion for Final Approval, Plaintiffs believe the Agreement is fair and reasonable to the Class.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit 1 to the Settlement Agreement.

### PROPOSED PRELIMINARY SCHEDULE

| # | Action | Deadline |
|---|--------|----------|
| 1 | Website Notice Posted by Settlement Administrator | Forty-five (45) days after the Court enters a Preliminary Approval Order ("PAO") |
| 2 | Deadline for Settlement Administrator to mail out direct mail notice | Forty-five (45) days after entry of the PAO |
| 3 | Deadline for Settlement Class Members to opt-out of the Agreement | Forty-five (45) days after Notice Date (ninety (90) days after entry of the PAO) |
| 4 | Deadline for submission of Notice of Intent to object to agreement | Forty-five (45) days after Notice Date (ninety (90) days after entry of the PAO) |
| 5 | Deadline for Settlement Class Members to file claims. | Thirty (30) days after Final Approval Hearing |
| 6 | Deadline for Class Counsel to file their Motion for Final Approval of the Settlement, application for attorneys' fees, costs and expenses, and for a service award for Plaintiff. | Thirty (30) days of expiration of the deadlines to request exclusion or file Notice of Intent to object to agreement (120 days after entry of PAO) |
| 7 | Deadline for Settlement Administrator to file proof of completion of Notice, along with complete and accurate Opt-Out list | Ten (10) days before Final Hearing |
| 8 | Final Approval Hearing | At least 135 days after entry of PAO (fifteen (15) days after deadline for Class Counsel to file the Motion for Final Approval) |

## CONCLUSION

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement (attached as Exhibit A), and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit 1 to the Agreement. The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. Plaintiff anticipates later requesting final approval of the settlement in advance of the fairness hearing.

Dated: November 27, 2019

Respectfully submitted,

By: */s/ Jake Phillips*
Jacob L. Phillips
FBN: 0120130
Edmund A. Normand
FBN: 865590
Normand PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
(407) 603-6031
service@ednormand.com
ed@ednormand.com

Christopher Lynch
FBN 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using CM/ECF system this 27th day of November, 2019.  I also certify

that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in the some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,
*/s/ Jake Phillips*
Jacob L. Phillips

## **SERVICE LIST**

ADD DENTONS

Robert Alden Swift
FBN: 0018518
Christine A. Wasula
FBN: 0148164
Cole, Scott & Kissane, P.A.
Tower Place, Suite 400
1900 Summit Tower Blvd.
Orlando, Florida 32810
robert.swift@csklegal.com
christine.wasula@csklegal.com

*Attorneys for Defendant*