**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ERIN JUNIOR,

      Plaintiff,

v.

INFINITY AUTO INSURANCE COMPANY,
a foreign insurance company,

      Defendant.

_____/

CASE NO.: 6:18-cv-1598-40-TBS

Class Action

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
<u>APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT</u>**

Plaintiff Erin Junior ("Plaintiff"), individually and on behalf of the settlement class ("Settlement Class"), respectfully requests that the Court grant final approval of the proposed class-action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto (the "Settlement Agreement" or "Settlement") (attached as Exhibit A and incorporated herein by reference), which this Court previously preliminarily approved. Doc. 57. Defendant does not oppose final approval of the Settlement in accordance with the terms thereto. Moreover, the deadline to object or opt-out of the Settlement Class expired on September 22, 2020, and no objections to the settlement have been made while only three insureds opted-out of the Settlement Class.

## I.     CONCISE STATEMENT OF THE RELIEF

Plaintiff requests that the Court enter final approval of a class action settlement between Defendant Infinity Auto Insurance Co. ("Infinity" or "Defendant") and Plaintiff and the Settlement Class. This Court previously granted preliminarily approval of this Settlement and preliminarily certified the Settlement Class. The Settlement Class consists of Florida residents insured for private passenger auto physical damage coverage by Infinity who suffered a first-party total loss of a covered vehicle during the five years prior to the filing of the lawsuit through the date of preliminary approval (June 22, 2020), and whose claims were adjusted and paid as a total loss. Doc. 56 at 5.

Plaintiff respectfully requests that the Court enter the proposed Order of Final Approval and Judgment. The proposed final approval Order certifies the Settlement Class, and complies with Rule 23 in that it (1) finds that the notice provided to the Settlement Class satisfied due process, was the best notice practicable under the circumstances, was calculated to apprise Settlement Class members ( "Class Members") of the pendency of the Action and of their right to object or exclude themselves from the Settlement, and constituted adequate and sufficient notice to all persons entitled to receive notice, (2) finds that the terms of the Agreement are adequate, fair, and reasonable, and (3) awards reasonable attorneys' fees and costs to Class Counsel and a reasonable service award to Plaintiff.

## II.    STATEMENT OF THE BASIS FOR THE REQUEST

The Parties have complied with the terms of the Order granting preliminary approval. Notice was provided to approximately 24,000 Class Members, none of whom objected to the Agreement. The Agreement is fair, adequate, and reasonable, and was the product of substantial negotiations between the Parties through a mediation overseen by mediator Rodney Max. *See* Doc. 44-3; *see also* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 632 (11th Cir. 2015) ("[A]bsent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted). As set forth in the Motion for Preliminary Approval (Doc. 44), the Agreement includes no cap on the payments available to Class Members – instead, it provides full relief for sales tax and title and registration transfer fees, as well as up to $525.00 in any other fees or costs incurred by Class Members in replacing their total-loss vehicles. Moreover, the Agreement eliminates the significant risk that the Class will lose on the merits and recover nothing. Because the Agreements provides Class Members damages that are almost certainly more than 100% of those recoverable at trial, while eliminating the risk of no recovery, Plaintiff submits that the Agreement should be approved.

## III.    MEMORANDUM OF LEGAL AUTHORITY

### A.  Background.

Plaintiff respectfully refers this Court to the declaration submitted by Jacob Phillips (attached as Exhibit B), as well as the declaration submitted by Class Counsel in support of the concurrently-

filed Motion for Attorneys' Fees, Costs, and Service Awards, for an extensive outline of the nature of the claims and the case history and development.

## B. The Proposed Settlement.

In the Agreement, Infinity agrees to: (1) make payment of $79.85 in Transfer Fees and sales tax of 6% (plus applicable local surtax) of the adjusted vehicle value ("ACV Sales Tax"), less any amounts originally included in the total-loss payment, to each member of the Settlement Class who submits a valid claim; (2) make an additional payment, calculated as 75% of any other fee or charge incurred in replacing the total-loss vehicle up to $525.00, to each member of the Settlement Class who includes their purchase or lease agreement with their submitted claim; (3) define the class to include Class Members who sustained a total-loss through the date of the Order of preliminary approval (June 22); and (4) change their business practice in Florida to include title and registration fees of at least $79.85 and ACV Sales Tax without precondition on all first-party total loss claims. Phillips Decl. at ¶¶16-18. The change in business practice was implemented on August 1, 2020. *Id.* at ¶¶20-21.

### 1. Settlement Includes Approximately $35.02 Million In Monetary Value, and Greater than 100% of Damages Requested in the Complaint.

Plaintiff calculates the value of the Settlement Agreement to be approximately $35.02 million, which consists of: (1) approximately $14.78 million available for claimants for unpaid ACV Sales Tax and Transfer Fees; (2) conservatively, $12.68 million in cash available for claimants for other fees and costs incurred in replacing a total-loss vehicle; (3) approximately $4.5 million in relief resulting from Infinity changing its practice and procedure to pay Transfer Fees and ACV Sales Tax without precondition moving forward (this amount includes a calculation only for the first two years of the changed practice and procedure); (4) approximately $563,000.00 secured because of the change in practice from August 1, 2020 (the date on which the change was implemented) through November 1, 2020; and (5) $2.5 million in attorneys' fees and costs (if such attorneys' fees are approved by the

Court). Phillips Decl. at ¶¶23-25. This amount likely *exceeds* the amount in damages Plaintiff could have secured at trial, because it includes fees and costs that are arguably "reasonably necessary" to replace a vehicle in Florida and not merely the ACV Sales Tax and Transfer Fees that are *required* to replace a vehicle in Florida. *Id.* at ¶19.

> ### 2.    Final Resolution of Case Eliminates the Significant Risk that Plaintiff and Class Members Will Not Recover Anything.

This Settlement provides resolution and damages that are likely more than 100% that would be recoverable at trial for claims concerning which there is mixed authority. While some courts addressing claims similar to those at issue here have held in favor of such claims, some courts have found that title fees and/or sales tax are not owed under ACV policies, particularly where ACV is defined with reference to market value. Phillips Decl. at ¶¶10-13. Notably, Infinity's Policy differs from many other policies in that it describes ACV with reference to market value, rather than "replacement cost less depreciation." Indeed, both appellate courts to address the claims held against the insureds regarding sales tax and title and registration fees. *See Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020); *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020). Plaintiff believes *Sigler* and *Singleton* were incorrectly decided, and note that they apply Illinois and Texas law, not Florida law. But, at minimum, the cases demonstrate that the authority on the question central to this case is split and the risk of litigating the case to conclusion and through appeal is significant. Phillips Decl. at ¶¶11-12.

Moreover, the Settlement provides up to $525.00 in any addition fees and costs, which likely far exceeds that which could have been recovered at trial. As set forth above, authorities are split concerning whether Plaintiff's theory of liability is meritorious. Even if it is correct, however, costs included in the ACV of damaged property are those reasonably necessary to replace the property. *See, e.g.*, *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684 (Fla. Dist. Ct. App. 2008). While sales tax and title and registration fees are mandatory (and thus certainly necessary to replace a vehicle in Florida), other fees or costs are not. It is highly uncertain whether a jury would have found other fees and costs – for

instance, document fees or dealer fees – to be reasonably necessary given that while it is likely that an insured will incur costs and fees in some form, the type and amount in which they may be incurred varies; some may incur dealer fees and tire fees but not service fees, while others may incur documentation fees but not dealer fees, and so on. Plaintiff would have been required to show that any specific fee is independently reasonably necessary to replace a vehicle, which would have been a difficult task. Thus, it is highly significant that the Settlement includes up to $525.00 in such costs. Phillips Decl. at ¶¶19, 53-55.

Determining the amount that was paid for sales tax on many of the claims requires a detailed review of the claim file to assess the basis for each total-loss payment that was made and what was included in that payment. *Id.* at ¶26. The Settlement requires Infinity to review the files of class members who submit claims to make such determinations. Further, determining the amount owed in other fees incidental to the replacement of a vehicle requires a review of the replacement purchase agreement. Class Members will have the opportunity to object to any determination of the amount owed and, if necessary, a neutral evaluator will arbitrate any disagreement. Agreement at ¶¶67, 76-80. To make the claim submission process as simple and easy as possible, Infinity extracted available information from its claim records concerning the vehicle make, model and year, and the date of loss, and pre-filled information on the claim forms. *See Id.* at Exhibit 3.

### 3. The Settlement Provides Valuable Prospective Relief.

Pursuant to the Settlement Agreement, Infinity changed its business practice in Florida to begin paying ACV Sales Tax and title and registration fees of at least $79.85 on first-party total-loss claims, without precondition, until and unless governing law is clearly changed to permit Infinity to withhold such costs or Infinity modifies its policy language. By the time of the end of the calendar year, the changed practice will result in payment of nearly $1 million dollars (based on analysis of data for total-loss payments during the previous five years). Phillips Decl. at ¶25. The monetary value of

this relief over a two-year period is approximately $4.5 million. *Id.* The change in business practice began on August 1, 2020. *Id.* at ¶¶20-21.

### 4. The Settlement Provides a Limited Release.

The Settlement Agreement provided a limited release of claims and clarified the limited *res judicata* effect of this case applies only to taxes and fees associated with replacing a vehicle, and not, for example, disputes concerning the underlying value of the vehicle. Phillips Decl. at ¶¶33-36. This is significant given the complicated and potentially thorny issue of claim-splitting. Plaintiff did not contest Defendant's underlying valuation of her vehicle, and did not allege that the valuation breached the Policy or violated Florida law. However, reasonable minds can differ – and indeed, some have, including a class action against Infinity currently pending in the Southern District, which was filed subsequent to this case. Doc. 51 (denying motion to accept transfer of class action against Infinity challenging underlying value of vehicle). Setting aside whether the "valuation methodology" claim is meritorious, that one plaintiff (Ms. Junior) alleges breach of contract for improper total-loss payment without including the "valuation methodology" claim while another plaintiff alleges breach of contract *based on* the "valuation methodology" claim potentially raises the question of claim-splitting. *See Vanover v. NCO Fin. Servs.*, 857 F.3d 833, 841 (11th Cir. 2017) (explaining that the "rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit") (citations omitted). By securing a narrowly tailored release that preserves claims related to the underlying valuation, the Settlement ensures that the claim-splitting doctrine will not be used to preclude such claims and that Class Members maintain the ability to pursue a claim concerning the underlying value of the vehicle, if so inclined, including the currently pending class action alleging such claim. Phillips Decl. at ¶¶33-36.

### 5. The Notice Plan Was Thorough and Robust, and the Claims Procedure Was Simple and Straightforward.

Pursuant to this Court's Order of preliminary approval, the parties provided robust notice and a simple, straightforward claims process. Exh. C, Declaration of Settlement Administrator ("Epiq Decl.") at ¶¶5-14. Class Members were provided direct notice by mail via postcard, which included a simple, easy to understand, detachable claim form with postage prepaid. *Id.* at ¶¶5-6. The information on the claim form was pre-filled, which assured Class Members that the claim form was legitimate. Moreover, the claim form did not require Class Members to write or input any information; rather, all that was required was a signature and date. No additional information or documentation was required to accompany the claim to receive payment of ACV Sales Tax and title and registration fees. Phillips Decl. at ¶¶27-28; *see also Wilson v. Everbank*, 2016 WL 457011, at *9 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any additional documentation beyond merely "checking a box").

A website was maintained for all Class Members to review information concerning the Settlement, submit claims, or review frequently asked questions and answers. Epiq Decl. at ¶11. Finally, a toll-free number was created by the Settlement Administrator to provide Class Members yet another avenue to inquire about the Settlement, submit claims, or ask questions and obtain information. *Id.* at ¶12. Through this robust notice process, Class Members could request exclusion from the Class or object to the Settlement. *See Braynen v. Nationstar Mortg., LLC*, NO. 14-CV-20726, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (a robust notice plan is evidence that the terms of settlement are fair and reasonable).

### 6.    Settlement Class Certification Is Warranted.

Before granting final approval of a settlement, a class must first be certified under Fed. R. Civ. P. 23(a) and one of the Rule 23(b) subsections.  The Settlement Class is defined as follows:

> All policyholders who were paid a Total Loss Payment under an Automobile Insurance Policy during the Class Period.

Excluded from the class are: (i) claims that were the subject of any lawsuit filed during the Class Period alleging causes of action related to any Released Claims, except for the Named Plaintiff's claims; (ii) claims for which Infinity received a valid and executed release during the Class Period; and (iii) Infinity, all present or former officers and/or directors of Infinity, the Neutral Evaluator, Class Counsel, a Judge of this Court, and Infinity's counsel of record. Agreement at ¶34.

As the Court held in granting preliminary approval, the threshold requirements of adequate class definition, Article III standing, and ascertainability along with the Rule 23(a) prerequisites and 23(b)(3) requirements are all established. Doc. 56; *see also* Phillips Decl. at ¶¶33-42. Moreover, because Infinity agreed to settlement and to review all claim documents to determine previous payments and thus what remains to be paid to Class Members who submit claims under the terms of the settlement, any individualized questions concerning damages are irrelevant. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (because settlement obviates a trial, it is irrelevant whether class treatment would be manageable if litigation had continued). For the reasons set forth in preliminary approval, Doc. 55, Plaintiff respectfully submits the Court should certify the proposed Settlement Class.[1]

### C.  Final Approval Is Warranted.

#### i.  Legal Standard

Consistent with the Eleventh Circuit's preference in favor of settlement of class litigation, courts should approve class action settlements under Rule 23 if the terms are "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e)(2) specifies that settlements may be approved if the settlement class was adequately represented, the settlement was negotiated at arm's length, and the relief provided is adequate (taking

---

[1] Defendant does not oppose certification of the Settlement class and agreed to settle the Settlement Class claims as set forth herein; however, this Agreement does not constitute a waiver of any such defenses to a litigated class.

into account the risk of litigation, the method for processing class members' claims, and agreements concerning attorneys' fees). Fed. R. Civ. P. 23(e)(2). In the Eleventh Circuit, the Rule 23(e) analysis includes consideration of the holding in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984), which outlined factors relevant to determining whether a settlement is fair and reasonable:[2]

> "Specifically, the court made findings of fact that there was no fraud or collusion in arriving at the settlement and that the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."

*Id.* at 986. Moreover, absent evidence of collusion or fraud, courts should generally defer to the judgment of experienced counsel. *See Greco*, 635 Fed. Appx. at 635. A court's determination concerning whether to approve a settlement as fair, adequate, and reasonable is subject to an abuse of discretion standard of review. *Id.*

## ii.  The Procedural Requirements for Settlement Are Satisfied.

The procedural requirements prescribed by Rule 23(e)(2) (arm's length negotiations and adequate representation) and *Bennett* (lack of collusion) – are easily satisfied here.[3] First, there was no fraud or collusion in the Settlement, and negotiations were conducted at arm's length. Indeed, settlement was only reached following lengthy negotiations with assistance of an experienced and well-respected mediator, Rodney Max. Doc. 44-3 (Max Decl.) at ¶12; Phillips Decl. at ¶¶14-15; *see also, e.g., Cook v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *17

---

[2] At the time *Bennett* was decided and set forth the standard for analysis of "fair, reasonable, and adequate" under Rule 23(e)(2), there were no textual factors guiding the analysis.  In 2018, the Rule was amended to add the referenced textual factors.

[3] According to the Advisory Committee, the 2018 amendments to Rule 23(e)(2) can be categorized as "procedural factors" and "substantive factors".  *See* Fed. R. Civ. P. 23(e)(2), Committee Notes on Rules - 2018 Amendment. The "procedural" factors are 23(e)(2)(A)-(B), while the "substantive" factors" are (c)(i)-(iv). *Id.*

(M.D. Fla. Jun. 22, 2020) ("The evidence in the record demonstrates that settlement was achieved only after extensive and lengthy negotiations with assistance of an experienced and well-respected mediator, Rodney Max, which establishes the arm's length nature of the negotiations and is strong evidence of a lack of collusion." (citing *Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion.")); McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 630 (11th Cir. 2015) (objector's argument concerning self-dealing and collusion "is belied by the record" because settlement occurred following "arms-length negotiations moderated by an experienced, court-appointed mediator."); *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019) (that settlement was overseen by mediator "further confirms that the process was procedurally sound and not collusive.").

Second, the Class was adequately represented by the Class Representatives and Class Counsel. Fed. R. Civ. P. 23(e)(2)(A). This requirement – distinct from the "adequacy" requirement of Rule 23(a)(4) – was added to the Rule in 2018 and addresses "whether class counsel and plaintiffs had an adequate information base before negotiating and entering into the settlement." *Burrow v. Forjas Taurus S.A.*, No. 16-21606, 2019 U.S. Dist. LEXIS 151734, at *23 (S.D. Fla. Sep. 6, 2019). This overlaps with the preexisting *Bennett* "stage-of- proceedings" factor. *See, e.g.*, *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."); *see also, e.g.*, *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18 (agreeing that Rule 23(e)(2)(A) "adequacy" factor overlaps with *Bennett* "stage of proceedings" factor) (citations omitted).

Here, the record clearly demonstrates the Plaintiff and Class Counsel possessed an adequate information base and sufficient information to evaluate the merits of the case such that the Class was adequately represented. As set forth in the declaration submitted by Mr. Phillips (Exh. B) and those submitted by all Class Counsel in support of the fee application, settlement was achieved only after extensive discovery and deposition testimony established the business practices at issue and confirmed the central liability questions at issue, i.e. whether Defendant's Policy and Florida statutory minimums required payment of sales tax and title and registration transfer fees and whether Infinity was permitted to condition payment of sales tax on proof that the insured replaced the total-loss vehicle. Phillips Decl. at ¶8. Such discovery and testimony also clarified the data retention and storage policies and procedures and highlighted the issues of predominance and ascertainability that would be central to class certification briefing. *Id.* at ¶10.

As such, Class Counsel was well-versed in the information necessary to evaluate the merits of the complicated issues presented in this litigation, and to assess the benefits versus the risks of further litigation – indeed, Class Counsel had already begun drafting class certification briefing and preparing summary judgment briefing. *Id.* at ¶13; *see also, e.g., Grant v. Ocwen Loan Servicing, LLC*, NO.: 3:15-cv-01376, 2019 U.S. Dist. LEXIS 14673, at *14-15 (M.D. Fla. Jan. 29, 2019) ("Through…depositions, document production, and written discovery, Plaintiff and Class Counsel were able to" establish adequate information base to satisfy adequacy requirement); *Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-CV-2246-T-23TGW, 2006 U.S. Dist. LEXIS 60320, at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). This is buttressed by Class Counsel's extensive experience and knowledge of the total-loss claims at issue. *See* Phillips Decl. at ¶¶49, 74-77; *Valenzuela v. Walt Disney Parks & Resorts United States, Inc.*, 2019 U.S. Dist. LEXIS 230678, at *18 (C.D. Cal. Nov. 4, 2019) (class counsel's

knowledge of and experience with the claims at issue supported finding that they possessed sufficient knowledge base to evaluate the settlement terms versus risks of litigation). Accordingly, the Rule 23(e)(2)(A) factor is satisfied.

### iii.  The Rule 23(e)(2) Substantive Factors Favor Approval.

As applied to the proposed Settlement, the Rule 23(e)(2)(C) factors addressing whether a settlement's terms are "adequate" – i.e., the risk of non-settlement, the method for processing claims and distributing relief, and the terms of attorneys' fees – favor granting final approval. It is worth noting that in amending Rule 23(e)(2), the Advisory Committee clarified that while it did not intend to "displace" various circuit's laws – meaning *Bennett* in the Eleventh Circuit – it did intend to "focus the court and the lawyers on the core" or "central concerns" of Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2)(C), Committee Notes on Rules - 2018 Amendment.

### 1.  Costs, Risks, and Delay of Trial and Appeal

The first factor is the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Courts have held that this factor is analogous to first four *Bennett* factors: (1) likelihood of success, (2) range of potential recovery, (3) where on the range of potential recovery the amount to which Class Members are entitled falls, and (4) duration and length of litigation. *See Cook*, 2020 U.S. Dist. LEXIS 111956, at *19-20 (citing *Williams v. New Penn Fin., LLC*, 2019 U.S. Dist. LEXIS 106268, at *11 (M.D. Fla. May 8, 2019)). Thus, "[u]nder both Rule 23 and *Bennett*, courts should estimate the potential recovery if ultimately successful versus the risks of losing outright, and determine whether the relief provided comports therewith." *Id.* (citations omitted); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (in order to assess Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible class wide recoveries and the likelihood of success in obtaining such results").

Here, analysis of Rule 23(e)(2)(C)(i), consistent with the *Bennett* factors, clearly favors approval of the Settlement. First, potential damages if Plaintiff was successful ranged from $4.60 (if Plaintiff only successfully secured registration transfer fees as damages) or $75.25 (title transfer fees) to the full amount of unpaid sales tax and $79.85 in Transfer Fees, plus (far less likely) any additional amount a jury found was "reasonably necessary" to replace a vehicle in Florida. The Settlement Agreement provides 100% in damages for sales tax and title and registration fees, plus up to $525.00 in additional damages for fees and costs incurred by an individual Class Member. Agreement at ¶¶63-67. Thus, the Agreement provides 100% of the relief possible for sales tax and title and registration fees, and, with the additional $525.00, almost certainly far more than what would have been possible if successful on the merits after litigation. That is, it is not a *compromise* amount that reduces the recovery to any Class Member making a valid claim in exchange for eliminating the risk of no recovery – instead, it is likely *more* than what would have been available absent a settlement even if Plaintiff was ultimately successful. It is therefore indisputable that the place "on the range of recovery," *Bennett*, 737 F.2d at 986, in which the relief afforded falls is adequate, given that it is at the very top of the range. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (finding significant that settlement afforded more relief than likely would have been secured at trial); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *7 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to class members on a claims-made basis" are an "extraordinary result"); *cf. Bennett*, 737 F.2d at 987 n. 9 (approved settlement providing 5.6% of the potential recoverable damages). Greater than full damages is an extraordinary result, standing alone, but here the result is greater still because Infinity agreed as part of the Settlement to change their business practice and begin paying ACV Sales Tax (without precondition) and title and registration fees to all total-loss insureds moving forward. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (analysis of

potential recovery and benefits secured "spans from a finding of non-liability" to "varying levels of injunctive relief" to monetary benefits).

This analysis is buttressed by the risk of no recovery at all in the event of an adverse trial court or appellate decision. The legal issues presented as to both class certification and the merits of the insurance policy dispute are enormously complex, and the parties will continue to undergo enormous expense if litigation were to continue through judgment, appeal, and any remand. Moreover, the outcome of this case has been uncertain from the outset, remains uncertain today, and contains numerous significant risks, including: (1) the Eleventh Circuit may conclude that Fla. Stat. § 626.9743 controls and does not require payment of Transfer Fees and only requires ACV Sales Tax if an insured proves they replaced the vehicle paid sales tax in that amount, or that the Policy does not require payment of ACV Sales Tax and/or Transfer Fees in the first instance; (2) the Florida Supreme Court could address and resolve the issue adverse to Plaintiff and the Class before the case is finalized; (3) class certification could be denied based on various factors including that individualized issues exist or that the class is not ascertainable; and (4) the claims at issue here could be denied based on questions of claim-splitting. Phillips Decl. at ¶25. Other courts, in Florida and elsewhere, have found that sales tax and/or title and registration transfer fees are not owed under an ACV policy. For example, in *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019), a Florida court granted the defendant insurance company's motion to dismiss claims for title and license transfer fees. Likewise, outside of Florida, both appellate to address the issue have found against the plaintiff concerning sales tax and title and registration fees. *See Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020); *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020). Plaintiff believes *Sigler* and *Singleton* were wrongly decided, and note that they apply Illinois and Texas law. But, at minimum, the cases demonstrate that the authority on the question central to this case is split and there is a significant risk that after litigating the merits of the case to conclusion and through appeal, the Class would recover

14

nothing at all. *See also, e.g.*, *Sylvester v. Depositors Ins. Co.*, No. 20-1322, 2020 U.S. Dist. LEXIS 152672 (E.D. Pa. Aug. 21, 2020) (dismissing claims for title and registration fees); *Thompson v. Progressive Universal Ins. Co.*, No. 19-CV-150-WMC, 2019 LEXIS 197155 (W.D. Wis. Nov. 14, 2019) (same, and distinguishing cases conflicting with holding by noting policy's definition of ACV as "fair market value" and holding that sales tax and title fees are not part of a vehicle's market value); *Wilkerson v. Am. Family Ins. Co.*, No. 1:19CV2425, 2020 U.S. Dist. LEXIS 184182 (N.D. Ohio Oct. 5, 2020) (dismissing claims for sales tax and title fees); *Williams-Diggins v. Permanent Gen. Assurance Corp. of Ohio*, No. 108846, 2020 Ohio App. LEXIS 2867 (Ohio Ct. of Appeals, 8th App. Div. Aug. 6, 2020) (holding taxes and fees are not part of "fair market value" of total-loss vehicle).

The risk of non-settlement is also increased by potential issues of claim-splitting. *See* Phillips Decl. at ¶¶33-36; *see also Vanover*, 857 F.3d at 841 (explaining that the "rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit.") (citations omitted). Such risk is particularly relevant here, because, as explained in Mr. Phillips' declaration, total-loss cases are generally brought under one of two (or both) types of claims: (1) claims related to payment of taxes and/or fees and (2) claims related to the methodology for calculating the base or underlying value of the vehicle. *Id.* The "methodology"-related claims are premised on Fla. Stat. § 626.9541, which prescribes various methods by which the base value of the vehicle can be calculated. A separately filed class action brings precisely such claim. *See Sardinas v. Infinity Auto*, Case No. 19-61369 (S.D. Fla.). Setting aside the validity of the "methodology" claim – Plaintiff did not allege that Infinity's methodology gave rise to a claim for breach of contract – it is clear that *some* members of the Class (or at least one) believes the claim is meritorious. Absent the Settlement, the claim-splitting doctrine arguably could have been used to prevent claims concerning the methodology because it was not brought in this Action and could be used if Settlement is not approved. By securing a Settlement with a narrowly tailored release, Plaintiff obviated such risk,

thereby allowing members of the Class, if so inclined, to prosecute claims related to the methodology for calculating the underlying value of a vehicle. *See, e.g.*, *In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610, 2014 U.S. Dist. LEXIS 64573, at *36 (N.D. Cal. May 8, 2014) (finding significant that tailoring of release preserved other claims class members may want to separately assert).[4]

As such, the Rule 23(e)(2)(C)(i) factors weights in favor of granting final approval of the proposed Settlement.

### 2. Method for Distributing Relief

The second factor is the method for "distributing relief" and "processing class-members claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Advisory Committee explained that courts should take note of whether the claims submission process is "unduly demanding." Fed. R. Civ. P. 23(e)(2)(C), Committee Notes on Rules - 2018 Amendment. As set forth above, this factor also favors approval because the claims' process, far from being "unduly demanding," was in fact extremely simple, streamlined, and straightforward. Infinity extracted information from its claim records to pre-fill the name, address, and the date of loss on the claim forms, and Class Members were required merely to sign an attestation confirming the prefilled information was correct (or update their address in the event they had moved). *See* Settlement Agreement at Exhibits 4 and 5; *see also Braynen*, 2015 WL 6872519, at *18; *Wilson*, 2016 WL 457011, at *9 (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."); *Rose v. Travelers Home & Marine Ins. Co.*, NO. 19-977, 2020 U.S. Dist. LEXIS 126761, at *18-19 (E.D. Pa. Jul. 20, 2020) (finding

---

[4] Plaintiff does not believe that the claim-splitting doctrine, properly understood, *should* foreclose the claims asserted here if Settlement had not occurred (or is not approved); but the salient point is not what Plaintiff believes is proper, but rather the risk that she is not. Certainly, given the dearth of Eleventh Circuit law on the issue, it would be a critical issue and subject to appeal either way, particularly given that Infinity has not waived the issue through any litigation tactics.

that Rule 23(e)(2)(C)(ii) favored settlement and holding that "[b]ecause all Settlement Class Members can recover for their claims without submitting any documentation of their loss, the claims process is not unduly demanding"). The Eleventh Circuit has made clear that even where a class member must actively fill out a one-page form to submit a claim, such process is not overly burdensome. *See Hanley v. Tampa Bay Sports & Entm't LLC*, NO. 8:19-CV-00550, 2020 U.S. Dist. LEXIS 89175, at *7 (M.D. Fla. Apr. 23, 2020) (citing *Poertner*, 618 F. App'x at 628). Here, even that is not required – instead, Class Members could simply sign a form that was already filled out.

The well-settled law in the Eleventh Circuit is that a claims-made settlement does not impact the fairness of a settlement. *See, e.g.*, *Bastian v. United Servs. Auto. Ass'n*, No. 3:13-cv-145, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Poertner*, 618 Fed. Appx. 624 (confirming approval of class settlement with less than 1% claims rate); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (a claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement"); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016); *Hall v. Bank of Am., N.A.*, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014); *Lee*, 2015 WL 5449813, at *18. Importantly, Infinity asserted it would not settle the claims absent the claims-made structure, Settlement Agreement at ¶118, which can be an important factor in the analysis. *See, e.g.*, *Cook*, 2020 U.S. Dist. LEXIS 111956, at *24 (holding that fairness and reasonableness of claims-made settlement is buttressed by the fact that "Defendants asserted they would not have settled the case on a direct pay model, and would have appealed this matter to the Eleventh Circuit") (citations omitted). The Settlement guarantees more than 100% damages to every Class Member who signed his or her name to a prefilled claim form with prepaid return postage. Plaintiff respectfully submits that the proposed Settlement yielding greater relief while eliminating the significant risk of no recovery whatsoever was in the best interests of the Class, particularly given the change in business practices moving forward.

17

Notably, the settlement is not like most settlements, where a defendant agrees to set aside an amount of money from which costs, fees, notice, administration, etc., are pulled, and to pay class members a (discounted) amount of their damages up to the cap the defendant agreed to set aside, which can be further reduced on a *pro rata* basis depending on the number of claims submitted. Instead, here, there is *no cap on liability* – Defendant agreed to make whole and pay in full any Class Member who makes a claim. Courts are in wide agreement that such a structure is eminently fair to class members. *See Cotton v. Hinton*, 559 F.2d 1326, 1334 (5th Cir. 1977) (where a class settlement will make claimants whole, objections as to fairness were "meritless"); *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 323 (3d Cir. 1998) (agreeing with and affirming district court's finding that settlement which required submission of claims and made whole such claimants was "extraordinary relief").

### 3. The Terms of Proposed Attorneys' Fees

The next factor is the "terms of any proposed award of attorney's fees[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Whether the attorneys' fees are reasonable on their own terms is a Rule 23(h) analysis and is addressed in the concurrently filed fee application, while Rule 23(e)'s concern is whether the attorneys' fees impacted the terms of the Settlement. *See Cook*, 2020 U.S. Dist. LEXIS 111956, at *24 (Rule 23(e)(2)(C)(iii) analysis "is distinct from the Rule 23(h) analysis…and instead addresses if and how the attorneys' fees impacted the [Settlement]."). Said another way, Rule 23(h) addresses whether the attorneys' fees are independently reasonable, while Rule 23(e)(2)(C)(iii) addresses whether the attorneys' fees agreement impacts the fairness of the *Settlement* terms.

For purposes of Rule 23(e)(2)(C)(iii), it is critical that (1) whatever amount this Court awards in attorneys' fees will be paid separately by Defendant and will have absolutely no impact on the amounts recovered by Class Members, and (2) payment to Class Members is not conditioned on any award of attorneys' fees. *See Burrow*, 2019 U.S. Dist. LEXIS 151734, at *27-28 (evaluating Rule

23(e)(2)(C)(iii) and finding significant that "attorneys' fees under the Settlement are to be paid by the Defendants separately and in addition to the relief granted to the Settlement Class Members" and "the relief available to Settlement Class Members was not conditioned on any amount of attorneys' fees," which "further supports the adequacy and fairness of this Settlement."); *Williams*, 2019 U.S. Dist. LEXIS 106268, at *16 (same); *Cook*, 2020 U.S. Dist. LEXIS 111956, at *24 (Rule 23(e)(2)(C)(iii) weighs in favor of approval where award of attorneys' fees has no impact on class member recoveries); *Grant v. Ocwen Loan Servicing, LLC*, NO.: 3:15-cv-01376, 2019 U.S. Dist. LEXIS 14673, at *20 (M.D. Fla. Jan. 29, 2019) ("The fact that class member relief is not conditioned on any amount of attorneys' fees being awarded by the Court further supports the adequacy and fairness of this Settlement."). Rather than making the Settlement contingent on approval of a certain amount of attorneys' fees, Class Members who submit a valid claim will receive the full damages amount irrespective of the outcome of the fee petition. *McWhorter v. Ocwen Loan Servicing*, NO.: 2:15-CV-01831, 2019 U.S. Dist. LEXIS 232149, at *33-34 (N.D. Ala. Aug. 1, 2019) (noting that "the settlement was not contingent upon the Court awarding any attorneys' fees and expenses"); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971, 2019 U.S. Dist. LEXIS 56655, at *3 (M.D. Fla. Apr. 2, 2019) (same).

Indeed, the agreement concerning attorneys' fees has absolutely no impact on recoveries by Class Members, which was finalized prior to negotiations concerning attorneys' fees. *See Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *81-82 (N.D. Ala. Jun. 25, 1999) (fee and costs agreement "between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to") (citations omitted); *Gutierrez v. Coco Baleadas Corp.*, No. 1:18-cv-2142, 2018 U.S. Dist. LEXIS 228018, at *1-2 (S.D. Fla. Aug. 30, 2018) (When "the attorneys' fees are negotiated separately and after settlement of" class member claims, "[c]ourts generally approve the settlement"). That relief will be provided to Class Members irrespective of any attorneys' fees award and that any

attorneys' fees awarded will have no impact on the amount provided to Class Members conclusively demonstrates that the "terms of [the] proposed award of attorneys' fees" counsels in favor of finding the settlement terms to be adequate.[5]

## 4. Rule 23(e)(2)(D)

The final factor is whether a proposed settlement treats class members equitably *vis-a-vis* each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, every Class Member is treated identically because they received the same Notice and the same Claim forms; moreover, while the *amount* of damages might vary (because vehicle values upon which sales tax is calculated varies), the *measure* of damages is the same, which is the relevant determination of equitable treatment of class members. *See Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-01701, 2020 U.S. Dist. LEXIS 167395, at *6 (N.D. Ga. Sep. 11, 2020) (class members treated equitably under Rule 23(e)(2)(D) because Settlement provided "same sliding scale of reimbursement" to all class members). Moreover, the scope of the release is extremely narrow and is tailored to the precise claims for which Infinity is providing relief, Agreement at 6 (defining Released Claims) and it is identical as to all Class Members. *See* Rule 23(e)(2)(D), *Committee Notes on Rules - 2018 Amendment* (instructing courts evaluating Rule 23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members in different ways"); *Cook*, 2020 U.S. Dist. LEXIS

---

[5] Rule 23(e)(2)(C) also requires disclosure of any side agreements related to Settlement. No other agreements exist here, other than Defendant's agreement to separately pay Ms. Junior $5,000.00 as a service award, to be paid separately from the class benefits (and does not reduce any class member's recovery whatsoever). As set forth in the concurrently-filed Motion for Attorneys' Fees and Costs and Service Award, the question of service awards are an issue of state law, *see Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017) (addressing whether to grant service award, and holding that "[w]e think it clear that…Erie requires us to apply Oklahoma law"), and Florida permits and encourages service awards, *see Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. Dist. Ct. App. 2009) (affirming $10,000 award because being a class representative "is less an honor than a headache"). For purposes of Rule 23(e)(2)(C)(iv), the salient point is that Defendant agreed to separately make payment of the Service Award after the substantive settlement terms were already finalized, and any payment has no impact on the payments provided to Class Members.

111956, at *25 (Rule 23(e)(2)(D) factor favored approval of settlement because "Settlement Class Members are treated identically insofar as it relates to Notice, Claim Forms, damages, and all other material ways."). Moreover, the Release applies identically to all members of the Class. *See McWhorter*, 2019 U.S. Dist. LEXIS 232149, at *33-34 (noting that critical to Rule 23(e)(2)(D) is whether the release in practice is equitable concerning class members). Importantly, there is no general release of claims, which class members might have to varying levels of merit; instead, the Release is limited to the specific claim for which recovery is provided. *See Burrow*, 2019 U.S. Dist. LEXIS 151734, at *29-30 (holding that Rule 23(e)(2)(D) favored approval because "[t]he Settlement contemplates a release specific to the subject matter addressed in this Action…and does not contemplate a general release of any and all claims of any kind against these Defendants."). This factor also favors approval of the Settlement.

### iv.   The Remaining *Bennett* Factors Favor Settlement.

As set forth above, the first four *Bennett* factors are subsumed within the textual Rule 23(e) factors. The two remaining *Bennett* factors not subsumed within Rule 23 – opposition to the settlement and the opinions of the Class Representatives and Class Counsel – also favor approval of the Settlement. First, out of more than 24,000 Class Members, not a single Class Member lodged an objection and only two Class Members opted out. Exh. C at ¶9-10. This lack of any opposition is strong evidence that the Settlement terms are fair, adequate, and reasonable. *Cook*, 2020 U.S. Dist. LEXIS 111956, at *25 (lack of objection was strong evidence that class settlement was fair and reasonable) (citing *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (only one objection indicates strong satisfaction with settlement)); *Hanley*, 2020 U.S. Dist. LEXIS 89175, at *13 (where no class member objected, "lack of opposition" weighed "strongly in favor of the Court's approval"); *Jairam v. Colourpop Cosmetics, LLC*, NO. 19-CV-62438, 2020 U.S. Dist. LEXIS 181656, at *18 (S.D. Fla. Oct. 1, 2020) (same).

Second, the opinions of Plaintiff and Class Counsel strongly favor approval of the Settlement. Class Counsel, who are experienced in complex class action litigation, believe that the Settlement is in the best interests of the Settlement Class because it provides more relief than likely could have been secured even at a successful trial and eliminates the risk of proceeding with this litigation and recovering nothing at all. Phillips Decl. at ¶52-61. Plaintiff agrees. Exh. D (Junior Decl.). Based on discussions with other litigators and with other insureds, Class Counsel believe that it is fair – more than that, it is ideal – to secure full damages and eliminate the risk of no recovery at all in exchange for the requirement that members of the Class sign an attestation and form that will then cause Infinity to review individual claim files to determine the amount owed, a determination that itself is subject to neutral review.[6] Class Counsel's belief has been justified by the recent Seventh and Fifth Circuit decisions against plaintiffs making substantially-similar claims. Had Plaintiff and Class Counsel failed to secure the extremely favorable settlement terms, it is likely that the available recovery through settlement would now be significantly less. Phillips Decl. at ¶62; *see also Greco*, 635 Fed. Appx. at 632 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.")); *Poertner v. Gillette Co.*, 6:12-cv-803, 2014 U.S. Dist. LEXIS 116616, at n.8 (M.D. Fla. Aug. 21, 2014) ("Class Counsel have experience in…class actions, and this Court gives credence to the opinion of Class Counsel, supported by the Court's independent review, that this Settlement is a beneficial resolution of the Class claims.") *aff'd* 618 Fed. Appx. 624 (11th Cir. 2015).

---

[6] Critical to Class Counsel's analysis is the provision of direct, individual Notice, Phillips Decl. at ¶¶65-67, which is widely considered and best and ideal Notice plan. *See, e.g., Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (although not always required as a matter of due process, actual individual notice is "the ideal" form of Notice); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974) (direct notice by mail is the "best notice" in the class action context); 3 Newberg on Class Actions § 8:28 (5th ed. 2017) (first-class mail is the "ideal" notice form).

## CONCLUSION

The proposed Agreement provides more than 100% of damages that could have been secured at trial to anyone who submits a valid claim, eliminates the risk of continuing litigation and appeal, and includes robust Notice, a simple, easy-to-understand claims' process, and a precisely-tailored release. If Settlement is not approved, the resulting litigation will be protracted, expensive, and there is a significant chance that the Class will recover nothing at all. Plaintiff, Class Counsel, and this Court are all fiduciaries to the absent class members, and Plaintiff respectfully submits that the proposed Agreement is clearly in their best interests. This belief is buttressed by the fact that Notice of the terms was provided to approximately 24,000 Class Members, none of whom objected to the proposed terms. As such, and for the foregoing reasons, Plaintiff requests that the Court enter an Order of Final Approval of Settlement.

Dated this 20th day of October, 2020.

Respectfully submitted,

**NORMAND PLLC**

*/s/ Jacob Phillips*
Jacob L. Phillips
Florida Bar No.: 120130
Edmund A. Normand
Florida Bar No.: 865590
3165 McCrory Pl., Ste. 175
Orlando, Florida 32803
Tel: 407.603.6031
jacob.phillips@normandpllc.com
ed@normandpllc.com

Christopher J. Lynch
Florida Bar No.: 331041
**CHRISTOPHER J. LYNCH, P.A.**
6915 Red Road, Ste. 208
Coral Gables, FL 33143
Tel: 312.967.3653
clynch@hunterlynchlaw.com
lmartinez@hunterlynchlaw.com
***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2020, I filed the foregoing **Unopposed Motion for Final Approval of Proposed Class Action Settlement** with the Clerk of the Court by using the CM/ECF system and caused a true and correct copy to be served upon all persons who have elected to receive such service.

*/s/ Jacob Phillips*
_____
Jacob L. Phillips
